UNITED STATES of America, Appellee,

v.

Edwin A. TOWNE, Jr.,
Defendant–Appellant.

No. 114, Docket 88–1136.

United States Court of Appeals,
Second Circuit.

Argued Sept. 19, 1988.

Decided March 22, 1989.

Stephen L. Saltonstall (Witten, Saltonstall & Woolmington, Bennington, Vt., Stephen S. Blodgett, Blodgett & Watts, Burlington, Vt., of counsel), for defendant-appellant.

George J. Terwilliger, III, U.S. Atty., Burlington, Vt. (John M. Conroy, R. Jeffrey Behm, Asst. U.S. Attys., D. Vermont, Burlington, Vt., of counsel), for appellee.

Before PIERCE, WINTER, Circuit Judges, and STEWART, District Judge.[*]

PIERCE, Circuit Judge:

This is an appeal from a judgment of conviction entered in the United States District Court for the District of Vermont, Albert W. Coffrin, *Chief Judge*, a jury having found appellant Edwin Towne guilty of receiving and possessing various firearms after a prior felony conviction in violation of federal laws. For the reasons that follow, we affirm the judgment of conviction and the enhancement of appellant's sentences on Counts 1, 3, 4, and 5. However, we believe that the district judge improperly enhanced appellant's sentences under 18 U.S.C. § 924(e)(1) as to Counts 6 and 8; therefore, we vacate the judgment of sentence on those two counts and remand for resentencing.

## BACKGROUND

On December 30, 1986, appellant Edwin A. Towne, Jr., was indicted in the District of Vermont on two counts of receiving and possessing a firearm after a prior felony conviction in violation of 18 U.S.C.App. § 1202(a)(1); three counts of receiving and possessing a firearm and ammunition after a prior felony conviction in violation of 18 U.S.C. § 922(h)(1); and three counts of receiving and possessing a firearm and ammunition after a prior felony conviction in

---

[*] Hon. Charles E. Stewart, Jr., Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

violation of 18 U.S.C. § 922(g)(1). After a three-day jury trial in June of 1987, the defendant was found guilty on all counts except Count 7. Thereafter, Towne was sentenced to a total of 70 years' imprisonment.

Towne's arrest and subsequent conviction were the culmination of a long chain of criminal events that began in August 1979, when appellant Edwin Towne allegedly raped a nine-year-old girl in New Hampshire. On April 1, 1980, a grand jury in New Hampshire indicted Towne on one count of aggravated felonious sexual assault. When he failed to appear for his arraignment on the charge, his bail was forfeited and a warrant was issued for Towne's arrest.

Sometime after the August 1979 incident, and while the New Hampshire investigation was pending, Towne left New Hampshire and went to Vermont. In February 1980, Towne kidnapped and sexually assaulted a Vermont woman. Shortly thereafter, Towne was apprehended, indicted on sexual assault and kidnapping charges, tried before a jury, convicted, and sentenced to 10–15 years in Vermont state prison. Upon appeal, his convictions were reversed and a new trial ordered by the Vermont Supreme Court. Thereafter, Towne chose to enter into a plea agreement with the State's Attorney for Windham County, Vermont. On March 11, 1983, Towne pleaded guilty in a Vermont state court to the felony charges of kidnapping and sexual assault in return for a reduced sentence.

During the plea negotiations, the Vermont State's Attorney contacted New Hampshire authorities regarding the August 1979 incident which led to the 1980 New Hampshire charges. The Vermont State's Attorney, Towne, and his attorney thereafter reached an oral understanding concerning those charges, based on certain representations that had been made over the phone by authorities in New Hampshire. According to the terms of this oral agreement, which was made part of the sentencing record in Vermont, New Hampshire state authorities promised to drop the pending New Hampshire charges against the defendant, and to "withdraw their detainer from the defendant's file." In accordance with the terms of a separate, written plea agreement between Vermont authorities and Towne, Towne was subsequently placed in a sexual offender program at the Chittenden Correctional Center, where he remained until he was released on parole in September 1984.

Despite New Hampshire's promise to drop its charges against Towne, the New Hampshire indictment remained in an active status in the files of the New Hampshire authorities, and the fugitive warrant was not withdrawn. According to Peter McDonough, the Hillsborough County attorney in that state, New Hampshire authorities maintained the indictment in an active status to assure that Vermont complied with the provisions of its plea agreement with Towne.

On September 10, 1986, two years after Towne's release from the Chittenden Program, fifteen-year-old Paulette Crickmore disappeared on her way to school in Richmond, Vermont. Shortly thereafter, Edwin Towne became a primary suspect in the local police investigation. On October 17, 1986, State Police Sergeant Leo Blais, the principal investigating officer in the Crickmore investigation, requested a background check on Edwin Towne from the National Computer Information Center ("NCIC"). The NCIC check disclosed the existence of the outstanding fugitive warrant for Towne which New Hampshire authorities had promised to withdraw. After Blais learned of the existence of this warrant, he called the Hillsborough County Sheriff's Department in New Hampshire to determine whether the warrant was still outstanding. Upon receiving an affirmative response, Blais requested and received from the Sheriff's Department a certified copy of the New Hampshire warrant. Four days later, on October 21, 1986, Sergeant Blais stopped Towne in his car and arrested him pursuant to 13 Vt.Stat.Ann. § 4954, which permits the warrantless arrest of persons who are fleeing from serious criminal charges in another state. During a search of Towne's car incident to

the arrest, Blais discovered a .32 caliber semi-automatic Mauser pistol under the driver's seat. Towne was arraigned on the fugitive charge in Vermont District Court on October 22, 1986, and, following a hearing, probable cause for the arrest was found. Towne pleaded not guilty and was released on a $10,000 appearance bond the same day.

Prior to arresting Towne, Sergeant Blais spoke with two women who had known Towne at Vermont's Chittenden Correctional Center—Joan Mollica, the Case Work Supervisor at the Center, and Linda Beal, who was Towne's case worker and later his supervising parole officer at the Center. Both women were aware of the New Hampshire charges against Towne, and sometime before the arrest Beal informed Blais that she believed the charges had been "resolved," although she was not certain. Mollica expressed a similar belief to other state police officers. The appellant acknowledges, however, that Blais never learned of the Vermont plea agreement, or of its connection with the New Hampshire charges against Towne, prior to his arrest.

On December 2, 1986, approximately one month after Sergeant Blais arrested Towne, a warrant was issued by United States Magistrate Neidermeier of the United States District Court for the District of Vermont to search Towne's residence in Eden Mills, Vermont. The magistrate issued the warrant based on the affidavit of Special Agent Varriale of the United States Bureau of Alcohol, Tobacco and Firearms, which referred to Towne's October arrest in Vermont. During the agents' search of Towne's residence, on December 3, 1986, they found, *inter alia,* a spring and plunger mechanism in a locked box, a 20–gauge shotgun barrel, a quantity of .22-caliber Winchester long rifle ammunition, a .30–.30 Winchester rifle, another rifle, and a Targa pistol. It was on the basis of this evidence and the evidence seized pursuant to Sergeant Blais' arrest of Towne that the December 30, 1986, eight-count federal indictment was filed in Vermont, charging appellant with possession of various firearms in violation of federal law.

In April 1987, prior to Towne's trial in federal district court, the government filed a notice pursuant to 18 U.S.C. § 3575 to have him designated as a "dangerous special offender." The notice was filed with United States District Judge Franklin Billings, who ordered the notice sealed. On September 30, 1987, after Towne had been tried and convicted by a jury before Chief Judge Coffrin, and a motion for a new trial had been denied, the Section 3575 notice was disclosed to the trial judge. On October 20, 1987, Judge Coffrin held an evidentiary hearing pursuant to 18 U.S.C. § 3575(b).

On December 24, 1987, Judge Coffrin issued an Opinion and Order designating Towne as a dangerous special offender with respect to Counts 1, 2, 3, 4, and 5, and ruling that Towne's sentences on all of those counts would be enhanced pursuant to 18 U.S.C. § 3575(b). However, Judge Coffrin reserved ruling on the applicability of the enhancement provisions of 18 U.S.C. § 924(e)(1) to Counts 6 and 8. On March 7, 1988, Judge Coffrin issued a third Opinion and Order, ruling that Towne was subject to enhanced sentencing pursuant to 18 U.S.C. § 924(e)(1) for his convictions on Counts 6 and 8 of the indictment. He also vacated the defendant's conviction on Count 2 as having merged with Count 8. That decision is published at 680 F.Supp. 687 (D.Vt. 1988).

On March 28, 1988, Towne was sentenced on Counts 1, 3, 4, 5, 6, and 8 to a term of imprisonment totalling seventy years. More particularly, he was sentenced to consecutive terms of imprisonment of 15 years each on Counts 3, 4, 6, and 8, and five years each on Counts 1 and 5. Since there is no possibility of parole by the terms of 18 U.S.C. § 924(e)(1), Towne would serve thirty years in prison on Counts 6 and 8. This appeal was timely filed.

## DISCUSSION

Appellant raises seven principal issues on appeal; four relate to events that occurred before and during his trial, and three relate to the sentences he received. Towne argues that the district court erred in (1)

denying his motion to suppress evidence seized by Sergeant Blais on October 21, 1986, pursuant to an allegedly invalid warrant; (2) failing to excuse for cause a juror who expressed doubt during voir dire that she could be impartial; (3) admitting evidence of Towne's possession of one of the subject firearms on dates other than the date specified in the indictment; (4) restricting the scope of defense counsel's cross-examination of a government witness at trial when counsel attempted to establish that the witness was testifying against Towne in order to curry favor with government prosecutors; (5) enhancing Towne's sentence on Counts 1, 3, 4, and 5 under the "dangerous special offender" statute, 18 U.S.C. § 3575, and imposing an aggregate sentence of forty years on those four counts, when that statute had expired just prior to Towne's sentencing and provided for a maximum term of twenty-five years; (6) enhancing Towne's sentence on Counts 6 and 8 pursuant to 18 U.S.C. § 924(e), which allows for sentence enhancement only after a defendant has been convicted of three prior violent felonies; and (7) in sentencing Towne to a total of 70 years' imprisonment without parole eligibility for thirty of those years in violation of the eighth amendment's proscription against cruel and unusual punishment. We consider these claims *seriatim*.

## I. PRE–TRIAL AND TRIAL ISSUES

### A. *The "Invalid" Arrest Warrant*

Appellant argues that the firearm, personal property, and ensuing statements obtained by the police in connection with the October 21, 1986 arrest should have been suppressed because Sergeant Blais knew or should have known that the New Hampshire fugitive warrant upon which his arrest was based was invalid. According to appellant, because the officer had been told before arresting Towne that the New Hampshire charges had been "resolved," Blais lacked probable cause to arrest him, and therefore the arrest violated Towne's fourth amendment rights. Alternatively, appellant argues that the arrest violated his due process rights under *Santobello v.*

*New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), because it constituted a "violation" of the prior plea agreement between himself and Vermont authorities concerning the New Hampshire charges.

In an Opinion and Order dated May 28, 1987, Judge Coffrin thoroughly addressed appellant's fourth amendment and due process claims and correctly rejected them. First, it is clear that Sergeant Blais did have probable cause to arrest Towne. Blais learned of the New Hampshire fugitive warrant after conducting a background check with the NCIC. He then personally contacted the Sheriff's Office of the issuing New Hampshire county and confirmed that the warrant was still outstanding. Blais thereafter asked for and received a certified copy of the warrant from New Hampshire, and only then did he arrest Towne. Although Towne's probation and parole officer in Vermont, Linda Beal, informed Blais that she suspected that the New Hampshire charges against Towne had already been "resolved," these were merely suspicions which must be assessed against Blais' three-pronged inquiry, which revealed that there was a warrant outstanding against Towne. As the district judge stated in his opinion:

> [The information that Sergeant Blais had regarding the outstanding fugitive warrant], coupled with the receipt of a certified copy of the warrant, was more than sufficient to dispel any doubt that might have been cast by the inchoate suspicions of Beal and Mollica that the New Hampshire charges had been "resolved" or "taken care of." Given the circumstances, we believe that an officer of reasonable caution would conclude that the New Hampshire charges were still pending and therefore that probable cause existed to arrest the defendant.

We agree and we conclude that Sergeant Blais had probable cause to arrest Towne, and, hence, Towne was not deprived of his fourth amendment rights. *See Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949);

*see also United States v. Fox,* 788 F.2d 905, 907 (2d Cir.1986).

██ The fact that the underlying New Hampshire warrant was improperly kept in the "active" files of the NCIC in violation of the three-way plea agreement between New Hampshire, Vermont, and the defendant, does not require this Court to suppress the seized evidence. As Judge Coffrin correctly explained, the only issue in this case is whether Sergeant Blais had probable cause to believe that the defendant was wanted on outstanding criminal charges in New Hampshire. If such probable cause existed, then Towne was afforded all the process he was due. *See Michigan v. DeFillippo,* 443 U.S. 31, 39–40, 99 S.Ct. 2627, 2633–34, 61 L.Ed.2d 343 (1979) (where officer had probable cause to arrest, fact that ordinance creating the offense was later held unconstitutional did not affect the legality of the arrest). Finally, there are no underlying policy considerations at work here which might warrant suppression of the evidence that was seized. Applying the exclusionary rule in this case would not further the purpose of the rule, which is to deter police misconduct, because it was objectively reasonable for Sergeant Blais to rely on the New Hampshire warrant in arresting the defendant. As the Supreme Court stated in *United States v. Leon,* 468 U.S. 897, 918–19, 104 S.Ct. 3405, 3418–19, 82 L.Ed.2d 677 (1984), the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity."

B. *Failure to Excuse Juror for Cause*

Sometime before jury selection in Towne's federal firearms case began, the body of Paulette Crickmore was discovered and Towne was indicted in Vermont state court for her brutal murder. During jury selection, one of the venirepersons, Ms. Cox, expressed reservations about her ability to be an impartial juror. Cox informed the court that she had heard of the defendant through the media, knew him to be a convicted rapist, and that she was aware of the pending state homicide charges against him. Judge Coffrin then questioned Ms. Cox very carefully about her willingness to be a fair and impartial juror. After eliciting her promise that she would try to decide the case based on the evidence presented, Judge Coffrin refused to excuse her for cause. The defense then used its last peremptory challenge to remove her from the panel. On appeal, Towne contends that the district judge's failure to remove Cox for cause constituted reversible error.

██ Appellant's arguments are without merit for several reasons. As a threshold matter, we are not persuaded that the district judge clearly abused his discretion in refusing to excuse this potential juror. *See United States v. Ploof,* 464 F.2d 116, 118 n. 4 (2d Cir.), *cert. denied,* 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972) ("There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury."). More important, however, appellant cannot demonstrate that he was prejudiced by the trial judge's refusal to excuse this venireperson for cause, since Ms. Cox was never a member of the jury that convicted Towne. Although appellant felt compelled to use his last peremptory challenge to remove this allegedly biased juror, peremptory challenges are neither mandated by the Constitution nor of constitutional dimension as such. Thus, so long as the jury which was *ultimately selected* was fair and impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the sixth amendment was violated. *Ross v. Oklahoma,* — U.S. ——, 108 S.Ct. 2273, 2274–75, 101 L.Ed.2d 80 (1988). Since appellant has in no way established the partiality of the jury that ultimately convicted him, he may not successfully claim deprivation of his sixth amendment or due process rights. *See United States v. Brown,* 644 F.2d 101, 104 (2d Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981).

C. *Admitting Evidence of Possession on Dates Not Charged*

At trial, the district judge allowed the government to present evidence of Towne's

possession of a Smith & Wesson pistol (the subject firearm in Count 1) on days other than the single date specifically charged in the indictment. On appeal, Towne argues that this evidence was evidence of "other crimes, wrongs or acts" under Fed.R.Evid. 404(b), and that, consequently, the district court erred by not giving a limiting instruction to the jury regarding the relevancy of this evidence when one was requested. *See* Fed.R.Evid. 105 (requiring a trial court to give a limiting instruction when evidence is admissible for one purpose but not admissible for another purpose).

The basic flaw in appellant's argument is that the challenged evidence was *not* "other crimes" evidence within the meaning of Rule 404(b). Rather, the evidence was admitted to show that it was Towne and not someone else who exercised continuous dominion and control over the pistol, in violation of 18 U.S.C. App. § 1202 (repealed 1986). The continuous possession of the same gun does not amount to a series of crimes, but rather constitutes a single offense. *See Ball v. United States*, 470 U.S. 856, 861, 865, 105 S.Ct. 1668, 1671, 1673, 84 L.Ed.2d 740 (1985) (receipt and continuous possession of a firearm is a single offense). Finally, even assuming *arguendo* that Towne's possession of the pistol on other days did constitute other criminal activity, evidence of uncharged criminal activity is not considered "other crimes" evidence under Fed.R.Evid. 404(b) if it "arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial." *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir.1983) (citations omitted); *see United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983). Thus, the district court did not err by refusing to give the requested limiting instruction with respect to evidence of Towne's possession of the pistol on days other than the date charged in the indictment.

## D. *Restriction of Defense Counsel's Cross–Examination*

Nelson North was one of the government's witnesses at trial, and North testified that he observed the firearms described in Counts 1, 6, and 8 in Towne's possession. At the time of Towne's trial, North was facing a charge in Vermont of driving with a suspended license. When defense counsel asked North about the pending state charge, Judge Coffrin interrupted the trial and had the jury removed. Upon questioning by defense counsel, North acknowledged that he "hoped" his testimony in the federal case would help him in his sentencing on the charge in state court. Notwithstanding the witness's admissions, Judge Coffrin thereafter sustained the government's objection to defense counsel's line of questioning, brought in the jury, and then reprimanded defense counsel for posing an "improper question." Appellant argues that the district court's decision not to allow cross-examination of North with respect to the state court charges was an abuse of discretion and a violation of the confrontation clause of the sixth amendment, because he was unable to elicit evidence of North's possible bias or his improper motives in testifying against appellant.

Appellant's contentions are not without some merit, and we believe that the district judge should have allowed defense counsel to cross-examine North regarding his motives for testifying against Towne. The judge's decision not to allow counsel's examination because there was no official "deal" between federal prosecutors and North was erroneous. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986); *cf. United States v. Dorfman*, 470 F.2d 246, 248 (2d Cir.1972) (defense can be permitted to elicit testimony that witness "hoped" for government leniency on pending charge), *cert. dismissed*, 411 U.S. 923, 93 S.Ct. 1561, 36 L.Ed.2d 317 (1973). Nevertheless, once it is determined that a court impermissibly restricted the scope of cross-examination, "the correct inquiry [then becomes] whether, assuming the

damaging potential of cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438. It is clear to us from the considerable evidence in this case against Towne that the restriction of defense counsel's examination of North was harmless beyond a reasonable doubt. The evidence with respect to each count was overwhelming, the testimony of Nelson North was both cumulative and corroborated, and North was both extensively and effectively cross-examined on all other relevant points. *See id.* at 684, 106 S.Ct. at 1438. Moreover, on appeal, Towne fails to demonstrate how the error was prejudicial or harmful to his defense. We conclude that while the district judge should have permitted broader cross-examination of North, any infringement of appellant's sixth amendment right to confront this witness was harmless beyond a reasonable doubt.

## II. SENTENCING ISSUES

Towne raises three issues on appeal with respect to his sentencing by the district court: the propriety of enhancing his sentence on Counts 1, 3, 4, and 5 under the Dangerous Special Offender ("DSO") Statute, 18 U.S.C. § 3575; the propriety of enhancing his sentence on Counts 6 and 8 under 18 U.S.C. § 924(e)(1); and the constitutionality under the eighth amendment of the total sentence imposed. We find appellant's third claim to be without merit, insofar as we find no violation of the eighth amendment's prohibition against cruel and unusual punishment. We will consider the remaining two claims in turn.

### A. *Sentence Enhancement Under 18 U.S.C. § 3575*

Towne challenges the enhancement of his sentence on Counts 1, 3, 4, and 5 pursuant to 18 U.S.C. § 3575 on three grounds: (1) that the district court lacked the authority to enhance his sentence because § 3575 was repealed two months before he was adjudged a "dangerous special offender" and five months before he was sentenced; (2) that the district court's characterization of defendant as "dangerous" pursuant to 18 U.S.C. § 3575(f) lacked any factual basis; and (3) that the total sentence of forty years on these four counts exceeded the statutory maximum, because 18 U.S.C. § 3575 only authorizes a maximum *aggregate* term of twenty-five years for all counts of conviction.

We find appellant's first and second points to be without merit. While it is true that 18 U.S.C. § 3575 was repealed prior to Towne's sentencing by the district judge,[1] the statute was in effect at the time that the underlying offenses were committed and at the time Towne was convicted. Under 1 U.S.C. § 109, which is the general federal saving statute, penalties accruing while a statute is in force may be enforced after expiration of that statute, unless the statute expressly provides otherwise. *See Warden v. Marrero,* 417 U.S. 653, 661, 94 S.Ct. 2532, 2537, 41 L.Ed.2d 383 (1974). Hence, the application of 18 U.S.C. § 3575's sentence enhancement provisions was saved by operation of 1 U.S.C. § 109. As for appellant's second claim, we note only that the district court's classification of Towne as "dangerous" under 18 U.S.C. § 3575(f) was amply supported by the record. Towne's long history of violent criminal behavior more than justified the district court's finding that Towne was a dangerous special offender within the meaning of § 3575.

Appellant's third claim presents a question which has not been explicitly resolved heretofore. Appellant argues that 18 U.S.C. § 3575 only permits a court to sentence a defendant to a *total* of twenty-five years on all counts of conviction, and that his forty-year sentence on Counts 1, 3, 4, and 5 therefore exceeds the statutory maximum provided in 18 U.S.C. § 3575. In so argu-

---

1. Section 3575 has been repealed with respect to crimes committed after November 1, 1987. *See* Sentencing Reform Act of 1984, Pub.L. No. 98–473, §§ 212(a)(2), 219(a), 235(a)(1), 98 Stat. 1987, 2027, 2031 (1984), *amended by* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985).

ing, appellant relies on this Court's decision in *United States v. DiFrancesco*, 604 F.2d 769, 780 n. 13 (2d Cir.1979), *rev'd on other grounds*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), wherein we reserved judgment on the question "whether § 3575 authorizes the imposition of consecutive sentences [on multiple counts] totaling more than twenty-five years." In this case, appellant's sentences on each of the four counts, taken separately, were well within the statutory maximum of twenty-five years,[2] but because the district judge imposed them as consecutive terms, the aggregate term of imprisonment was forty years.

■ In the wake of any prior reservations, we now hold that with respect to dangerous special offenders who have been convicted of multiple felonies prior to November 1, 1987, § 3575 does not preclude the imposition of consecutive sentences which, in the *aggregate*, exceed twenty-five years, so long as each individual sentence does not exceed twenty-five years. Eighteen U.S.C. § 3575 plainly states that "[w]henever an attorney charged with the prosecution of a defendant ... for an alleged *felony* ... has reason to believe that the defendant is a dangerous special offender," he shall file appropriate notice with the court of his intention to seek an enhanced sentence in the event of conviction. 18 U.S.C. § 3575(a) (emphasis added). Section 3575 further provides that "[i]f it appears ... that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term *otherwise authorized by law for such felony*." 18 U.S.C.

§ 3575(b) (emphasis added). We read the words "such felony" to mean that the statutory limit of twenty-five years only applies to individual felonies, and we conclude that the statute does not limit the aggregate sentence that a district judge may impose. *See United States v. Scott*, 859 F.2d 792, 796 (9th Cir.1988) (holding that prosecutor was entitled to seek separate sentence enhancements under 18 U.S.C. § 3575 "for *each one* of the felonies alleged in the indictment") (emphasis added); *see also United States v. Calabrese*, 755 F.2d 302, 306 (2d Cir.1985) (court impliedly recognized that 25-year limitation of § 3575 applies on a per count basis, rather than to the aggregate sentence). Since the language of the statute is clear and unambiguous on its face, there is no need to examine the underlying legislative history. *See Burlington Northern Railroad Co. v. Oklahoma Tax Commission*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) ("Unless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.'") (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)).[3] Accordingly, we affirm Towne's sentence as to Counts 1, 3, 4, and 5.

B. *Sentence Enhancement Under 18 U.S.C. § 924(e)(1)*

■ Towne also was convicted on Counts 6 and 8 of the indictment, both of which charged a violation of 18 U.S.C. § 922(g)(1). A later section of title 18 provides in relevant part:

In the case of a person who violates section 922(g) of this title and has *three previous convictions ... for a violent*

---

**2.** Appellant received fifteen-year terms of imprisonment on Counts 3 and 4, and five-year terms on Counts 1 and 5, all terms to be served *consecutively*, for an aggregate term of forty years' imprisonment.

**3.** Even if the statutory language were not clear, however, the legislative history is not inconsistent with its plain meaning. On appeal, the appellant misconstrues the context of the statute's legislative history; the legislative debate which he cites focused only on the maximum penalty for each *count* of conviction. Nothing

in the legislative history cited by appellant indicates either explicitly or implicitly that the maximum sentence of 25 years under § 3575 applies to aggregate felony convictions, rather than to individual felonies. *See, e.g.,* 1970 U.S.Code Cong. & Admin.News 4066 (letter of Will Wilson, Assistant Attorney General for the Criminal Division to Emanuel Celler, Chairman of the House Judiciary Committee, discussing benefits of imposing "maximum term" of 30 years rather than proposed 25-year term).

*felony* ..., such person shall be ... imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction ..., and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

18 U.S.C. § 924(e)(1) (emphasis added). In 1976, Towne was indicted and convicted in New Hampshire on two felony counts—one for aggravated felonious sexual assault and one for kidnapping. Both felonies were committed in connection with an extended attack upon a single victim in July of 1976. Thereafter, in 1983, as discussed above, the defendant pleaded guilty in Vermont state court to two new felony counts —again, one for sexual assault and one for kidnapping. And, again, both felonies were committed in connection with a prolonged attack upon a single female victim. The district judge herein determined that Towne's convictions for kidnapping and sexual assault in each of these two cases qualified as four separate felony "convictions" for purposes of 18 U.S.C. § 924(e)(1), although in each case the two felonies were committed during a single criminal episode which involved "a continuous course of offense behavior directed against a single victim." 680 F.Supp. at 691. Since the district judge considered each of the felony convictions in each of the criminal episodes to be independent of the others, he held that the four prior convictions triggered the enhanced penalty provision of § 924(e)(1).

According to appellant, the district judge erred when he enhanced Towne's sentence under § 924(e)(1) on the basis of these four prior convictions. Towne argues that in enacting § 924(e)(1), Congress only sought to enhance the sentence of convicted persons who had been before the courts on three prior, separate occasions, and who had been convicted of violent felonies on each of those occasions. According to appellant, Congress did not intend § 924(e)(1)'s enhanced penalty provisions to apply to the sentences of convicted defendants who had been convicted previously of committing multiple felonies during the course of fewer than three single criminal "episodes." Hence, according to appellant, the district judge should not have enhanced his sentence because his four prior felony convictions arose out of only *two* episodes of criminal conduct, and not out of three separate episodes as is required under the statute.

The question presented by appellant is whether the statutory reference to "three previous convictions" in § 924(e)(1) should be construed literally to mean *any* three felony convictions, regardless of whether the three predicate felonies were committed simultaneously during a single spasm of criminal activity; or whether it should be construed as a reference to the number of prior *occasions* on which a defendant has engaged in, and been convicted of, violent criminal conduct. Although the question presented is one of first impression in this Circuit, it has been fairly well-established in other circuits that § 924(e)(1)'s reference to "convictions" pertains to single "episodes" of felonious criminal activity that are distinct in time, rather than literal convictions. *See United States v. Gillies,* 851 F.2d 492, 497 (1st Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *United States v. Harden,* 846 F.2d 1229, 1232 (9th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 264, 102 L.Ed.2d 252 (1988); *United States v. Rush,* 840 F.2d 580, 581 (8th Cir.1988); *United States v. Wicks,* 833 F.2d 192, 194 (9th Cir.1987), *cert. denied,* — U.S. ——, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v. Petty,* 828 F.2d 2, 3 (8th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2827, 100 L.Ed.2d 928 (1988); *United States v. Greene,* 810 F.2d 999, 1000 (11th Cir.1986); *see also* Brief of United States Solicitor General filed in Opposition to Defendant's Petition for Certiorari at 5, in *United States v. Wicks,* No. 87–6807 (U.S.1988) (stating that every federal court of appeals that has considered the issue has adopted the multiple episodes approach, that there is no conflict among the circuit courts of appeals with respect to this issue, and that these courts have "simply required that the

criminal episodes be distinct in time"). Therefore, we hold that the district court erred in enhancing Towne's sentence on the basis of the four felony convictions which arose out of his two prior attacks on women.

Although the plain language of § 924 arguably supports the district court's literal construction of the statute, it is apparent from the statute's legislative history that literal adherence to the terms of § 924(e)(1) would thwart the clear legislative goals underlying the subject Armed Career Criminal Act. In support of this conclusion, we rely not only on expressions of legislative intent in the Congress prior to § 924's enactment, but also on recent indications that the Supreme Court and the United States Solicitor General have come to similar conclusions about the proper interpretation of § 924(e)(1).

Two years ago, this issue was raised when a petition for certiorari was filed in the Supreme Court seeking review of the Eighth Circuit's decision in *United States v. Petty*, 798 F.2d 1157 (8th Cir.1986). In *Petty*, which involved the predecessor statute to § 924(e)(1),[4] the Court of Appeals for the Eighth Circuit had initially interpreted the statute as the U.S. Attorney's office now urges us to do and the court took into account the actual number of prior criminal convictions in determining whether to enhance the defendant's sentence. 798 F.2d at 1160. The Supreme Court granted *certiorari* and the Solicitor General filed a brief that took the opposite view. The Solicitor General's brief canvassed the statute's legislative history and attempted to demonstrate that Congress had intended its sentencing enhancement provision to apply only to recidivists and repeat offenders, and not to persons who commit several crimes at one time. The Supreme Court thereafter vacated the lower court judgment and remanded the matter to the Eighth Circuit "for further consideration in light of the position presently asserted by the Solicitor General in his brief." *Petty v. United States*, 481 U.S. 1034, 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987).

Upon remand, the Court of Appeals adopted the Solicitor General's view that the statute was in fact "intended to reach multiple criminal episodes that were distinct in time" rather than multiple felony convictions arising out of a single criminal episode. *Petty*, 828 F.2d at 3; *see also United States v. Montgomery*, 819 F.2d 847, 850 (8th Cir.1987) (in light of Solicitor General's *Petty* brief, government conceded that convictions for simultaneous robbery of two victims constitutes single conviction for purposes of § 1202(a) enhancement; remanded for resentencing in light of government's changed position). Since then, the Eighth Circuit has reaffirmed this position, reiterating in a recent opinion that the "criminal episodes underlying the [defendant's prior] convictions ... must be distinct to trigger the provisions of the [statute]." *Rush*, 840 F.2d at 581.

Apart from the Supreme Court's apparent acceptance of the Solicitor General's view, as we stated earlier, we are persuaded to adopt the "multiple criminal episodes" approach based upon the statute's legislative history. *See also* Brief of Solicitor General at 4–10, *Petty v. United States*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987) (canvassing the legislative history).[5] We believe that the Armed Career Criminal Act indeed was aimed at career criminals, rather than "those who

---

**4.** In the *Petty* case, the defendant was convicted of violating 18 U.S.C.App. § 1202(a). Congress repealed § 1202(a) in 1986, but it made the enhanced penalty clause applicable to violations of 18 U.S.C. § 922(g) and recodified it as 18 U.S.C. § 924(e)(1). *See* Firearm Owner's Protection Act of 1986, Pub.L. No. 99–308, §§ 102, 104, 100 Stat. 452, 458–59 (1986). The statutory language at issue in this case—*i.e.*, the reference to "three previous convictions"—was unchanged. When the section was recodified, Congress broadened the applicability of the enhanced penalty section by expanding it to cover persons convicted of three violent felonies. Section 1202(a) had previously referred only to "a person ... who has three prior convictions ... for robbery or burglary."

**5.** The Solicitor General has recently reaffirmed the view expressed in the *Petty* case. *See* Brief of Solicitor General in Opposition to Defendant's Petition for Certiorari at 4–6, *United States v. Wicks*, No. 87–6807.

merely commit three punishable acts." *Wicks*, 833 F.2d at 195 (Pregerson, J., dissenting); *see also Armed Career Criminal Act*, Hearing Before the Subcomm. on Crime of the House Comm. on the Judiciary, 98th Cong., 2d Sess. 47–66 (1984) (testimony of Assistant Attorney General Stephen S. Trott) ("Trott Testimony"); *Armed Career Criminal Act of 1983*, Hearing Before the Senate Comm. on the Judiciary, 98th Cong., 1st Sess. 11, 15, 18–19 (1983) (testimony of Deputy Assistant Attorney General James Knapp). As Judge Pregerson noted in *Wicks*, the title of the Act itself indicates that it was aimed at punishing "career" criminals, "individuals who are resistant to society's efforts at rehabilitation." *Wicks*, 833 F.2d at 195. This view was confirmed by Assistant Attorney General Stephen S. Trott, who stated at a 1984 Congressional hearing concerning whether to require two rather than three convictions for an Armed Career Criminal Act violation:

> These are people who have demonstrated, by virtue of their definition, that locking them up and letting them go doesn't do any good. They go on again, you lock them up, you let them go, it doesn't do any good, they are back for a third time. At that juncture, we should say, "That's it; time out; it is all over. We, as responsible people, will never give you the opportunity to do this again."

Trott Testimony, *supra*, at 64.

It seems quite clear that this section of the Act was intended to target recidivists, *i.e.*, those who have engaged in violent criminal activity on at least three separate occasions, and not individuals who happen to acquire three convictions as a result of a single criminal episode (or, as here, two such criminal events). Finally, apart from the purposes of the Act, we also agree with the Solicitor General that Congress did not intend § 924's enhancement provisions to be any broader than other, similar federal enhanced penalty provisions which *do* require courts to focus on the number of prior criminal episodes in which a defendant was involved. *See, e.g.,* 18 U.S.C. § 3575(e)(1); 21 U.S.C. § 849(e)(1) (repealed 1987). Applying this interpretation of § 924(e)(1), we therefore conclude that since Towne's four convictions arose out of two, not three, distinct criminal episodes, they do not trigger the enhancement provisions of § 924(e)(1).

On appeal, the United States Attorney for the District of Vermont argues that even if we adopt the "multiple episodes" approach, the enhancement of Towne's sentence was proper since kidnapping and rape are felonies which do not usually arise out of the same course of continuous criminal conduct. He argues that the two felonies "have very different elements, protect discrete interests, [and] do not inevitably occur together." Perhaps so, but we believe that, under the circumstances of this case, in each instance the kidnapping and rape offenses *were* part of a continuous course of conduct which was directed against a single victim. In 1976, and again in 1983, Towne was convicted for abducting and raping a woman who had picked him up while he was hitchhiking. Towne's method of operation was to threaten his victim with a weapon and then force her to drive to an area where he would carry out the sexual assault. Thus, unlike other cases cited by the appellee, where a convicted defendant had committed separate crimes against separate victims in separate locations, *see, e.g., Wicks*, 833 F.2d at 193; *Greene*, 810 F.2d at 1000, we consider each of these two attacks to be a single criminal episode. Therefore, we reject the government's argument that this case is distinguishable from the *Petty* case.

## CONCLUSION

For the foregoing reasons, we are constrained to hold that the district court improperly enhanced the defendant's sentences on Counts 6 and 8 pursuant to § 924(e)(1). Accordingly, we vacate the sentences imposed on these counts and remand to the district court for resentencing. The underlying judgments of conviction, however, are affirmed, as are the sentences on Counts 1, 3, 4, and 5. We have considered all of the other arguments presented, and find them to be without merit.