UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 07-4628
(3:05-cr-00216-RJC)

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

        v.

QUALO MARTEZ LOWERY,

              Defendant - Appellant.

O R D E R

     The court amends its opinion filed July 1, 2008, as follows:

     On page 17, first full paragraph, line 3, the word "calendaring" is corrected to read "calculating."


                                    For the Court - By Direction


                                    /s/ Patricia S. Connor
                                         Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 07-4628**

─────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

QUALO MARTEZ LOWERY,

Defendant - Appellant.

─────────

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.  Robert J. Conrad, Jr.,
Chief District Judge.  (3:05-cr-00216-RJC)

─────────

Argued:  March 18, 2008                    Decided:  July 1, 2008

─────────

Before WILKINSON and MOTZ, Circuit Judges, and William L. OSTEEN,
Jr., United States District Judge for the Middle District of North
Carolina, sitting by designation.

─────────

Affirmed by unpublished per curiam opinion.

─────────

**ARGUED:** Frank Alan Abrams, Arden, North Carolina, for Appellant.
Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville,
North Carolina, for Appellee.  **ON BRIEF:** Gretchen C. F. Shappert,
United States Attorney, Charlotte, North Carolina, for Appellee.

─────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

I

Appellant Qualo Martez Lowery was indicted by a federal grand jury in the Western District of North Carolina and charged in three separate counts relating to drug possession and distribution. In Count One, he was charged with a violation of 21 U.S.C. § 846, conspiracy to possess with intent to distribute cocaine hydrochloride and cocaine base from January 2001, up to and including May 24, 2005. Appellant was also charged with two counts of a violation of 21 U.S.C. § 841(a)(1), one for possession with intent to distribute cocaine on September 10, 2002 (Count Three), and the second for possession with intent to distribute cocaine hydrochloride on December 12, 2002 (Count Four). Shortly after indictment the United States filed an Information pursuant to 21 U.S.C. § 851, giving Appellant notice that Appellant's previous conviction for a felony drug offense would be used to increase the applicable statutory penalties.

On May 10, 2006, Appellant's case was tried before a jury. The jury found Appellant guilty on all three counts. On May 15, 2007, Judge Conrad presided over Defendant's sentencing hearing. The court found that certain factors used to enhance Appellant's guideline range, namely the amount of drugs attributable to Appellant and Appellant's prior convictions, were justified by the

2

evidence presented.  Accordingly, Appellant was sentenced to 360 months on each of three counts to be served concurrently.


II

Appellant's case arose from an alleged conspiracy between Appellant and other individuals to possess with the intent to distribute cocaine hydrochloride and cocaine base, as well as two other substantive offenses in which Appellant was involved in the sale of cocaine.  In preparation for the trial, the United States arranged to have a number of witnesses testify against Appellant regarding his drug sales.  Some of the witnesses included individuals who claimed they had long-standing and ongoing drug conspirator relationships with Appellant.

The United States filed a Notice of Intent to Use 404(b) Evidence prior to trial.  Appellant objected.  The district court held a pretrial hearing regarding the admissibility of the Government's 404(b) evidence.  The court ruled that Appellant's long-standing relationships and transactions with other drug conspirators, though periods of it predated the dates of the conspiracy alleged in the indictment, were admissible as substantive evidence of the existence of the conspiracy.  To the extent the other 404(b) testimony described individuals who maintained a relationship independent of the conspiracy, the

3

district court allowed the evidence as proof of motive, intent, knowledge, common scheme or plan, and absence of mistake.

At the hearing, the district court heard Appellant's objection to the admission of testimony and a memorandum created by Officer Douglas Moore describing the September 10, 2002, undercover transaction with Appellant, the offense charged in Count Three of the indictment. Officer Moore testified that, while acting in an undercover capacity, he purchased approximately 33 grams of cocaine for $1,200 on September 10, 2002, from Appellant. Officer Moore stated that he had written a report of that incident, but the report was incomplete because he lost his original case notes describing the transaction. Despite the loss of his notes, Officer Moore maintained that his account of the incident was completely accurate.

Around April 2006 and prior to trial, the Assistant U.S. Attorney instructed Officer Moore to prepare a new memorandum ("the Statement") describing the loss of the report as well as all of the factual information he could recall about the September 10, 2002, transaction. Officer Moore prepared the Statement wherein he incorrectly recorded the date of the transaction with Appellant as September 19, 2002.[1] The Statement was provided to defense counsel

---

[1]Officer Moore's memorandum contains two errors. Initially, he incorrectly typed September 19, 2002, as the date of the September 10, 2002, transaction. Later, in the same memorandum, Officer Moore recorded the date as September 19, 2003.

4

as <u>Brady</u> material approximately two to three weeks prior to trial.[2] After hearing the arguments of counsel, the district court denied Appellant's motion to exclude Officer Moore's testimony, holding that the initial discovery materials relied upon by Officer Moore to compose the Statement had been provided to defense counsel prior to January 2006, and later supplemented with the Statement. The district court held that the Government could present Officer Moore's testimony at trial and that defense counsel could address the issues concerning Officer Moore's error on cross-examination.

Appellant proceeded to trial on May 10, 2006, on his plea of not guilty to all counts. The Government's first witness was Officer Moore, who described the September 10, 2002, undercover narcotics purchase from Appellant. The Government called Appellant's uncle, Lonnie Brown, as the second witness. Mr. Brown testified that Appellant had been involved in the drug business since the Appellant was 16 years old. He further testified that he and Appellant Lowery had been working together to sell drugs, including crack cocaine, since 1993. According to Mr. Brown, he would get the drugs, "cut it up," and then he and Mr. Lowery would sell the drugs.

---

[2]Though the recreated memorandum was not supplied to defense counsel until a few weeks before trial, defense counsel had already obtained discovery materials which Officer Moore used to write the Statement.

In 1998, Mr. Brown was arrested for selling drugs and went to prison. Consequently, his drug-selling partnership with Appellant ceased. Once Mr. Brown was released from prison, however, their partnership resumed. Mr. Brown stated that in 2002, he and Appellant would get powder cocaine, he would cook it into crack cocaine, and they would sell it. According to Mr. Brown, he and Appellant sold approximately 10 to 15 kilograms of crack cocaine between 2002 and 2004.

Other witnesses were called to testify by the Government regarding Appellant's drug activity. After the Government rested its case, the defense introduced evidence in the form of a stipulation to records establishing that Appellant attended truck driving school in May 2004. Appellant did not testify. At the completion of trial, the jury convicted Appellant of all three counts.

Following Appellant's conviction, the probation office prepared a presentence report. Based on Appellant's relevant drug quantities presented at trial (more than 10 kilograms of cocaine base) and classification as a career offender, his resulting offense level was 38 with a criminal history category of VI. Appellant objected to the calculation by the probation officer, arguing that because the indictment charged five kilograms of powder cocaine and 50 grams of crack cocaine that the relevant drug quantity used to determine a guideline range was limited to those

6

amounts. Appellant also objected to all the facts contained in the presentence report that were not found by the jury, including proof of his prior convictions.

The district court held that the presentence report properly calculated the advisory sentencing guideline range with an offense level of 38 and a criminal history category of VI. The district court imposed a sentence of 360 months on each count, to be served concurrently, followed by a period of supervised release of 10 years. From that judgment, Appellant submitted a timely notice of appeal. After the court entered a final judgment, Appellant appealed. The case is now before this court on Appellant's appeal of his conviction and sentence. For the reasons stated below, we affirm both.

In his appeal, Appellant raises four issues. First, Appellant contends that the failure to provide timely discovery of Officer Moore's notes constitutes a violation of the rule established in Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). Second, Appellant contends that the district court erred in admitting the testimony of Mr. Brown and others as Rule 404(b) evidence. Third, Appellant contends that the district court erred in determining the validity of prior convictions and the relevant drug amounts used for purposes of sentencing. Fourth, Appellant makes certain vague and unsubstantiated claims that the trial judge had a conflict resulting from his participation as a U.S. Attorney in the

7

prosecution of Mr. Brown.  We address each of these arguments in turn.


III

Appellant claims that the Government violated its duty to provide timely disclosure of all the facts relating to Officer Moore's investigation and undercover transaction with Appellant. Appellant further argues that the late provision of discovery with a "defective" transaction date of September 19, 2002, deprived him of a fair trial.  As a result, Appellant argues this count of his indictment should have been dismissed.  We disagree.

Though Appellant objected to the use of Officer Moore's testimony during trial, he based his objection on the reliability of the testimony and not on a failure to disclose in accordance with Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).  When a party raises an issue for the first time on appeal, we review the issue under the plain error standard.  See United States v. Higgs, 353 F.3d 281, 309 (4th Cir. 2003); Fed. R. Crim. P. 52(b).  We may correct a claimed error if (1) error exists, (2) the error is plain, and (3) the plain error affected a substantial right. United States v. Olano, 507 U.S. 725, 733-34, 113 S. Ct. 1770, 1777-78 (1993).  The decision to correct the error is left "within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affects the

8

fairness, integrity or public reputation of judicial proceedings." Id. at 732, 113 S. Ct. at 1776 (citing United States v. Young, 470 U.S. 1, 15, 105 S. Ct. 1038 (1985)) (internal quotations omitted).

In support of his claim, Appellant invokes Brady v. Maryland to justify reversing his conviction for the September 10, 2002, drug transaction based on the Government's failure to turn over exculpatory evidence. In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id., 373 U.S. at 87, 83 S. Ct. at 1196-97. Since its decision in Brady v. Maryland, the Court has added a corollary to its previous holding, stating that "the duty to disclose such evidence is applicable even though there has been no request by the accused, . . . and that the duty encompasses impeachment evidence as well as exculpatory evidence." Strickler v. Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 1948 (1999) (citations omitted). The evidence must be material, however, meaning that a court is justified in setting aside a conviction only if "there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." Wood v. Bartholomew, 516 U.S. 1, 5, 116 S. Ct. 7, 10 (1995) (citations omitted).

Though there is not a hard and fast deadline for disclosing Brady material, we have previously stated that "[n]o due process violation occurs as long as Brady material is disclosed to a defendant in time for its effective use at trial." U.S. v. Smith Grading & Paving, Inc., 760 F.2d 527, 532 (4th Cir. 1985) (citation omitted). However, the time necessary for effective use at trial may even include disclosure at trial itself. Id. ("The disclosure of this exculpatory evidence, at trial, does not rise to the level of a constitutional violation.").

Appellant received Officer Moore's supplemental statement before trial began on May 10, 2006, as he was in possession of the document about the same time as the Government. The fact that the Statement was not delivered as part of the Government's initial discovery materials is immaterial because the document did not exist until approximately a month before trial. The memorandum was created just prior to trial when the Assistant U.S. Attorney learned that a more detailed report of the September 10, 2002, transaction might exist in addition to the evidence vouchers and laboratory report already in possession of both parties. Accordingly, the Assistant U.S. Attorney questioned Officer Moore and discovered that the more detailed report containing Officer Moore's field notes had been lost. Upon realizing that Officer Moore had an independent recollection of the events, the attorney directed Officer Moore to prepare the Statement describing the

10

entire incident, including the loss of the original case notes. Officer Moore complied and completed the memorandum, which is dated April 13, 2006.[3]  The Government disclosed the Statement to Appellant's counsel approximately one week after its completion, giving Appellant two to three weeks to review the document prior to trial.  Such time was sufficient for Appellant to fully analyze the Statement before trial began, as the Statement was less than one page in length.

Appellant's contention that Officer Moore's memorandum contained new Brady material is also unavailing.  Appellant and his counsel were clearly aware of all the relevant facts relating to the discovery material for the September 10, 2002, transaction prior to trial.  When the Government disclosed the Statement, Appellant already possessed evidence vouchers and a laboratory report supporting Officer Moore's account of the transaction.  Even assuming that the Statement contained Brady material, Appellant's counsel was able to conduct a thorough cross-examination of Officer Moore about the conflicting dates and other inaccuracies in the Statement.[4]  Thus, any potential Brady material was provided to

---

[3]Apparently, Officer Moore's recollection and the other discovery material consistently reflect September 10, 2002, as the date of the transaction with Appellant.  No Brady material existed prior to the preparation of the supplemental report containing the wrong date.

[4]The following exchange is an example of counsel's cross-examination concerning the Statement:

Appellant in time for him to effectively prepare for trial. We therefore find there was no <u>Brady</u> violation as a result of the timeliness of the disclosure of Officer Moore's Statement.

Appellant further argues that the district court committed error in refusing to provide the written copy of Officer Moore's Statement to the jury when the jury requested a copy of the Statement during deliberations. We review a court's decision to admit or exclude evidence for abuse of discretion. <u>See</u> <u>United States v. Cole</u>, 293 F.3d 153, 162 (4th Cir. 2002). In the case at bar, the district court refused to provide the jury with a copy of the Statement because it had not been admitted in evidence. (J.A. 256.) In fact, Appellant's counsel concurred with that decision. A jury is permitted to consider only those exhibits which have been admitted as evidence in a case. <u>See</u> <u>United States v. Lentz</u>, 383 F.3d 191, 213 (4th Cir. 2004) ("[O]nly admitted evidence goes to

---

Q: Do you remember now if you put in this memoranda you arrested Mr. Lowery?

A: It says he was arrested sir. It doesn't say – I didn't arrest him.

Q: And also has the incorrect date. It says "September 19th of 2003."

A: That is incorrect.

Q: And he was not arrested.

A: Not by me, no, sir.

(J.A. 92.)

12

the jury at the conclusion of the trial."). Accordingly, we affirm the district court's decision to exclude Officer Moore's memorandum from the jury.

IV

Appellant contends that the district court erred in allowing witnesses to provide testimonial evidence of Appellant's participation in drug transactions that occurred before the dates contained in the indictment. As mentioned above, we review a court's decision to admit or exclude evidence for abuse of discretion. See Cole, 293 F.3d at 162. A district court's decision to admit 404(b) evidence "will not be disturbed unless it was arbitrary or irrational." United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988) (citation omitted).

In this case, the Government developed its case using witnesses who testified as to Appellant's drug activity prior to the dates charged in the conspiracy and sought to introduce that evidence under Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) provides that evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Before admitting evidence

13

of similar acts under Rule 404(b), the court must make a threshold inquiry as to "whether that evidence is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 686, 108 S. Ct. 1496, 1499 (1988). In making this inquiry, a district court is "entitled to substantial deference, because a district court is much closer than a court of appeals to the pulse of the trial." United States v. Russell, 971 F.2d 1098, 1104 (4th Cir. 1992) (citation and internal quotations omitted). As such, its "rulings will not be disturbed absent a clear abuse of discretion." Id. (citation omitted).

The district court properly admitted the testimony of Lonnie Brown and Michael Alexander with respect to the drug distributions prior to the charged conspiracy period. Mr. Brown described his participation with Appellant in drug transactions beginning in the early 1990's and continuing through the date of the charged conspiracy. Mr. Alexander testified that he was a runner for Appellant beginning in the late 1980's or early 1990's, and also purchased cocaine from Appellant and delivered it to other addicts. Mr. Alexander claimed that he continued his activity through the time of the charged conspiracy.

Appellant contends that the court erred in its threshold inquiry in deciding whether to admit the evidence of Appellant's drug-related activity prior to the dates of the conspiracy because the evidence "polluted this case" and "den[ied] the defendant

14

[Appellant] a fair trial." (Appellant's Br. 19.) That evidence, however, was relevant to explain how the illegal relationship between the participants in the crime developed. See, e.g., United States v. McMillon, 14 F.3d 948, 955 (4th Cir. 1994) (The court admitted the testimony of witnesses whose "testimony was helpful in providing the jury with an understanding of how they knew [the defendant] and how it came about that they were trusted brokers or other participants in her dealings."). The testimony of Brown and Alexander was also relevant to the issues of Appellant's knowledge of the drug trade and intentional participation in the conspiracy. See United States v. Sanchez, 118 F.3d 192, 195-96 (4th Cir. 1997) (The court allowed evidence of prior criminal acts, reasoning that the defendant's prior dealings with the testifying witness "prove his knowledge of the drug trade and suggest that he was an intentional, rather than unwitting, participant in the conspiracy.").

Evidence of a defendant's involvement in drug transactions prior to the dates charged in a conspiracy is also admissible as substantive evidence of a defendant's guilt. Courts have continually held that "the mere fact that the evidence involved activities occurring before the charged time frame of the conspiracy does not automatically transform that evidence into 'other crimes' evidence." United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994) (collecting cases). "Evidence of uncharged

15

conduct is not considered 'other crimes' evidence if it 'arose out of the same . . . series of transactions as the charged offense, . . . or if it is necessary to complete the story of the crime (on) trial.'" Id. (citing United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989)). Accordingly, we hold there was no error in the district court's evidentiary rulings admitting the testimony of Mr. Brown and Mr. Alexander relating to their drug transactions with Appellant prior to the relevant dates of the conspiracy.

V

Appellant argues that the district court violated his rights under the Sixth Amendment by imposing a sentence that exceeded the maximum possible penalty allowable based on the findings by the jury. We review a sentence "under a deferential abuse-of-discretion standard," regardless of whether a sentence imposed is "inside, just outside, or significantly outside the Guidelines range." Gall v. United States, ___ U.S. ___, 128 S. Ct. 586, 591 (2007). Our "initial review is for significant procedural error." Id. at __, 128 S. Ct. at 597. Then, we "consider the substantive reasonableness of the sentence imposed." Id.

The Supreme Court stated in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), that "the Sixth Amendment is violated when a district court, acting pursuant to the Sentencing Reform Act and the [Federal Sentencing] guidelines, imposes a sentence greater

16

than the maximum authorized by the facts found by the jury alone." United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005) (citing Booker, 543 U.S. at 243, 125 S. Ct. at 756). Thus, Booker requires that the maximum penalty be established by the jury verdict.[5]

Within the applicable maximum statutory penalty, a district court must begin the process of determining a sentence by correctly calculating the applicable Guidelines range. Gall v. United States, ___ U.S. ___, 128 S. Ct. 586, 596 (2007). The applicable Guideline range, when correctly calculated, is "the starting point and the initial benchmark," but it is "not the only consideration." Id. at __, 1128 S. Ct. at 596. In fact, a district court "may not presume that the Guidelines range is reasonable," but instead is to "make an individualized assessment based on the facts presented." Id. at __, 1128 S. Ct. at 596-97. In doing so, a district court "must giv[e] both parties an opportunity to argue for whatever sentence they deem appropriate, . . . then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Id. at __, 1128 S. Ct. at 596. We defer to the district court's assessment of whether a sentence within the Guidelines adequately serves sentencing objectives and whether attempts to achieve uniformity across defendants convicted of

---

[5]Booker's holding also states that a statutory maximum penalty may be established by Defendant's admissions. United States v. Booker, 543 U.S. 220, 244, 125 S. Ct. 738, 756 (2005). That part of the holding is not applicable in this case.

17

similar crimes would work an injustice in a particular case. Kimbrough v. United States, ___ U.S. ___, 128 S. Ct. 558, 574-75 (2007).

Appellant first objects to the district court's calculation of the statutory penalties. In this case, Appellant was convicted of conspiracy to possess with intent to distribute five kilograms or more of cocaine hydrochloride and in excess of 50 grams of cocaine base. The jury answered special interrogatories as to Count One as follows:

> As to Count One, you find the defendant guilty.
>
> 1A: If guilty, was 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine reasonably foreseeable to Qualo Martez Lowery. You answered "yes."
>
> 1C: If guilty, was 50 grams or more of a mixture and substance containing a detectible amount of cocaine base reasonably foreseeable to Qualo Lowery? You answered "yes."

(J.A. 257.) The jury's answer to the special interrogatories established the application of a maximum statutory penalty for more than five kilograms of cocaine hydrochloride and 50 grams of cocaine base. The maximum statutory penalty is life in prison. See 21 U.S.C. §§ 851, 841(a)(1) and (b)(1)(A). In fashioning a sentence, the court was well within its discretion to make a factual finding as to the relative drug amounts in determining a sentence within the applicable statutory range established by the jury's verdict.

Appellant also challenges the use of his prior convictions in determining his sentence, as those were not proven to a jury. This argument has been rejected by the Supreme Court in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348 (2000).  In <u>Apprendi</u>, the Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  <u>Id.</u> at 490, 120 S. Ct. at 2362-63.  The trial court is therefore authorized to make factual findings regarding a defendant's prior convictions and criminal history.  <u>See</u> <u>United States v. Morris</u>, 429 F.3d 65, 72 (4th Cir. 2005); <u>United States v. Cheek</u>, 415 F.3d 349, 354 (4th Cir. 2005).

In this case, the Government filed a notice of prior convictions pursuant to 21 U.S.C. § 851, designating Appellant's previous felony convictions for possession with intent to sell and deliver cocaine (1994), possession with intent to sell and deliver cocaine (1996), and assault with a deadly weapon inflicting serious injury (1999).[6]  This subjected Appellant to statutory penalties of not less than 20 years or more than life in prison.  <u>See</u> 21 U.S.C. § 841(b)(1)(A).

At sentencing, Appellant objected to the use of the 1994 conviction for possession with intent to sell and deliver cocaine

---

[6]The previous convictions were valid to consider because Appellant was older than 18 at the time of the prior convictions.

19

as an enhancement pursuant to 18 U.S.C. § 851. He also objected to his classification as a career offender which was based on his two previous felony convictions. The Government presented evidence through fingerprint examination to prove all three of Appellant's prior convictions, and Appellant has not challenged this evidence on appeal. Instead, Appellant's challenge is simply to the district court's authority to find these sentencing facts and guideline ranges. Once the jury establishes the applicable statutory maximum penalty with its findings, the court acts as the finder of fact for purposes of guideline calculation within the statutory maximum. See Hughes, 401 F.3d at 546. Here, the district court was well within its authority to consider Appellant's prior convictions and find that Appellant was a career offender when calculating Appellant's proper guideline.

Additionally, the district court properly determined a reasonable sentence. Once the court calculated the applicable statutory penalty and the Guideline range, the court, as required by Gall and Kimbrough, treated the Guidelines as advisory and heard arguments on the appropriate sentence. (J.A. 336-434.) Counsel for Defendant argued for a sentence at the low-end of the applicable advisory Guideline range. (J.A. 337.) The court then stated its reasoning in determining a sentence that was "sufficient but not greater than necessary to accomplish the sentencing and objectives of punishments . . . ." (J.A. 344-46.) Because the

district court imposed a sentence in accordance with the procedure as established by <u>Booker</u>, <u>Gall</u>, and <u>Kimbrough</u>, we find no Sixth Amendment violation or other procedural error, and we affirm the judgment of the district court.[7]

VI

For the reasons set forth in this opinion, the judgment of the district court is

<u>AFFIRMED</u>.

---

[7]At sentencing, Appellant, individually and without support of counsel, claimed for the first time that the trial judge, while serving as U. S. Attorney, had participated in immunizing or prosecuting Lonnie Brown, one of the witnesses called by the Government to testify against Appellant. Appellant first made the unsubstantiated allegation of a conflict at sentencing on May 15, 2007, during a colloquy between Appellant and the district court. Appellant's trial counsel did not join or argue Appellant's allegation. We note that Appellant's brief was filed in this court on September 26, 2007, by new appellate counsel. Like Appellant's allegation in district court, no evidence or specific facts were presented in support of Appellant's allegation in the brief before this court. In fact, the issue was raised at best as an aside in the discussion of an entirely separate issue and not in a manner conducive to any resolution of the claim. Given that Appellant has never raised this issue in a timely, proper, or non-conclusory fashion, we reject his claim.

21